**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v.  ) | **Criminal No. 19-10459-RWZ** |
| ) | |
| **ORLANDO SANTIAGO-TORRES** ) | |
| a/k/a "King Landy," ) | |
| **Defendant.** ) | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S EMERGENCY MOTION, PURSUANT TO 18 U.S.C. § 3145(b) TO REVOKE THE DEFENDANT'S PRETRIAL DETENTION BASED ON DEFENDANT'S VULNERABILITY TO THE COVID-19 PANDEMIC[1]

The United States of America, by Andrew E. Lelling, United States Attorney, and Philip A. Mallard, Assistant United States Attorney, hereby respectfully oppose the Defendant, Orlando Santiago Torres' ("Santiago-Torres" or the "Defendant") Emergency Motion to Revoke the Defendant's Pretrial Detention (D. 743). After an evidentiary hearing and order of Detention that issued (D. 504), the Defendant sought release based on the ongoing COVID-19 pandemic (D. 677), which the government opposed (D. 725). After the Magistrate Judge denied that motion (D. 732), the Defendant now appeals that decision to the District Court (D.743). As the evidence at the hearing demonstrated, and the Magistrate Court previously found, the Defendant presents an overwhelming danger to the community and risk of obstructing justice that requires his continued detention pretrial.

---

[1] Docket Entries are identified by docket and page numbers, where appropriate (D. _, p. _). References to the February 7, 2020, transcript (D. 718), are by page number (Tr. _). References to the exhibits admitted at the hearing are by number (Exhibit _). The government assumes the Court has access to the Defendant's criminal history through the pretrial services report, and references those entries by docket number.

The Government appreciates the gravity of the COVID-19 pandemic and acknowledges that it presents a serious national and state public health emergency.  However, even in the midst of this pandemic, the factors set forth in 18 U.S.C. § 3142 still guide the Court in determining, on a case-by-case basis, whether pretrial release is appropriate, and as the evidence adduced at the Defendant's detention hearing amply shows, he poses a danger to the community and no conditions or combination of conditions can adequately address these risks.  The Defendant's Motion should be denied.

## **FACTUAL BACKGROUND**

The government moved for detention under 18 U.S.C. § 3142(f)(1)(C) & (E), and (f)(2)(A) & (B).  A detention hearing was held on February 7, 2020; TFO Michael Alvarado testified and nineteen exhibits were admitted in evidence.  The Defendant was identified in the Detention Affidavit to be the Enforcer for the New Bedford Chapter of the Latin Kings. See ECF #12-1, p. 31.

A plea transcript from a prior witness intimidation conviction was marked as an exhibit. See Exhibit 16; Criminal History, 1833-CR-004731.  During that incident, the Defendant approached a victim of a larceny case, where the Defendant was charged.  This altercation took place outside of the courthouse after a hearing.  The Defendant "stated, 'I know where you live. And tell your husband to keep his fucking mouth -- keep his mouth shut in court.'" Tr. 8, 40-42; Ex. 3, 16, 17.

A series of recordings were introduced via compact disc (Exhibit 19), and related reports and transcripts were admitted as exhibits.  These pertained to the following incidents:

- An October 28, 2018 audio recording, where the Defendant boasted about almost shooting at police while driving in Puerto Rico with other Latin Kings. See Exhibits 1, 19; Tr. 9-10.

- A February 2019 video recording, where the Defendant and other Latin Kings members chase down a rival gang member and assaulted him in the street. See Exhibits 13, 19; Tr. 10-14.

- A November 2019 surveillance, where the Defendant and other Latin Kings member identify a rival gang member, with the initials J.O., who was sixteen years at the time, sitting in a motor vehicle outside of a convenience store. See Exhibits 11, 12; Tr. 16-22. The Defendant and three other Latin Kings, including codefendant Emanuel Lopez-Velez, surround the vehicle, and strike the outside of it, causing the front passenger to flee. With the doors now open, the Defendant and the other Latin Kings drag J.O. out of the vehicle and proceed to assault him with fists and their feet. Investigators learned that a chain was stolen from J.O. during this robbery.

- A May 2019 incident, captured on video, where codefendant Luis Santiago, another charged Latin King can be seen running with a firearm through a backyard moments before Santiago fired the gun. See Exhibit 6, 19; Tr. 21-25. The Defendant was present, along with other Latin Kings members during this fight with rival gang members and was reported to have provided Santiago with the firearm.

- A July 2019 shooting, captured on video where the Defendant is alleged to have fired multiple rounds at opposition gang members. See Tr. 24-30; Exhibits 7, 8, 9, 19. This shooting took place at the Zeiterion Theatre in New Bedford, and, based upon recordings, the Defendant was the shooter. Minutes after the shooting, the Defendant and other Latin Kings reconvened at a trap house to discuss the incident. The Defendant discusses the incident, describes the conduct of other Latin Kings members approvingly, and then states that they were just there watching him shoot the firearm at the rival gang members. Tr. 25-30; Exhibit 7, 8, 9, 19.

- A September 28, 2019 shooting, where a rival gang member named "Reese" was shot by Latin Kings. See Exhibit 4, 10; Tr. 30-40. During this incident, police identified the Defendant as the front passenger of a vehicle from which the shooters emerged; codefendant Natanael Velazquez was identified as the rear passenger, and an individual named Christopher Adamides was identified as the driver. A music video was introduced and played where the Defendant and other members of the Latin Kings discuss some of the recent incidents. Among the references to cooking crack cocaine, and shooting rival gang members with firearms matching the calibers of those recovered, the Defendant also rapped the lyrics, "Get hit like Reese," and "end up in CC," which is a reference to the local hospital where the victim received treatment. See Tr. 38-39. TFO Alvarado explained this lyrical reference and that it amounted to, essentially, a confession to the September 28, 2019, shooting.

3

Still images from the search of the Defendant's apartment on December 5, 2019, were also admitted. See Exhibit 14; Tr. 12-16. The items seized during the search included magazines for an assault rifle, and two firearms: a revolver and a semiautomatic handgun.[2] See Tr. 13-16. Additionally, a letter from another individual was also recovered where the author is incarcerated and requests that the Latin Kings assist in obstructing justice on a pending drug case. The letter states, "whatever you guys can do to help fix this and convince a certain person to come to a different story than what she said." Exhibit 14; Tr. 15-18. The letter also references an individual named Christopher Adamides, who is a charged defendant in the September 28, 2019, shooting case where the Defendant was also identified. Ex. 5.

## MAGISTRATE COURT'S ORDER OF DETENTION

The Magistrate Judge properly noted that a rebuttable presumption arose under 18 U.S.C. 3142(e)(3)(1), based upon Count Two. See D. 504. Additionally, the Court found that the Defendant has not introduced sufficient evidence to rebut the presumption. See D. 504.

Beyond that the Court found "[b]y clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community" and "[b]y a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required." See D. 504.

The Court noted the weight of the weight of the evidence, the lengthy period of incarceration, the Defendant's prior criminal history, his history of violence and use of weapons, and lack of stable employment. See D. 504. The Court also found the following:

> Mr. Santiago Torres, 25 years old, is alleged to be in a RICO conspiracy with the Latin Kings and to have conspired to distribute cocaine. At his detention hearing, the

---

[2] Test firings from this particular handgun have been preliminarily matched to a casing recovered from the September 28, 2019 shooting. See D. 881-1 (NIBIN report linking firearm to shooting on 9/28/19).

> government played videos of Mr. Santiago Torres participating in violent gang-related beatings of two individuals, being present during a shooting, and boasting about another shooting that he presumably committed. In addition, the government presented evidence that demonstrated that he has threatened a witness in the past and has also attempted to obstruct justice by attempting to influence another witness' testimony against him. The government also played a rap video which demonstrates that Mr. Santiago Torres is certainly a gang member and espouses violence against others. Finally, a search of his residence turned up large-capacity magazines and a revolver.
>
> The evidence against him is overwhelming and he is facing a substantial sentence if convicted.
>
> The court finds that he has not overcome the presumption of detention for dangerousness and risk of flight and that the government has met its burden on both these grounds for detention.

D. 504.

The Defendant then moved for reconsideration (D.677), which the government opposed (D. 725), and the Magistrate Court denied (D. 732). In denying the motion for reconsideration, the Court made the following ruling:

> The court is well-aware of Mr. Santiago-Torres' extreme health condition and the difficulties faced by his counsel in preparing his case, where his client is housed out-of-state in order to receive medical treatment while incarcerated. However, the court cannot release Mr. Santiago-Torres, because of the exceedingly dangerous conduct he engaged in in connection with the present case, including beating rival gang members, (activity which was captured on videotape and which the court watched during the detention hearing), shooting at rival gang members, openly boasting about those activities on video, giving other gang members guns with which to shoot people, selling drugs, possessing multiple firearms, and intimidating and tampering with witnesses. The court is very concerned about the pandemic and its possible effect on Mr. Santiago-Torres' well-being, but has equally compelling concerns about the safety of the community if he were to be released. The court will not disturb its prior finding on detention.

D. 732.

## LEGAL STANDARD

After an order of detention issues, the Bail Reform Act offers a defendant two choices: a motion for review of the detention order under 18 U.S.C. § 3145(b), or a motion to reopen the detention hearing under 18 U.S.C. § 3142(f). See United States v. Reynolds, 609 F.Supp.2d 108,

5

110 (D.Me. 2009) (citing United States v. Rebollo-Andino, 312 Fed.Appx. 346, 347-48, 2009 WL 565697, *1-2 (1st Cir. Mar. 6, 2009)). Under Section 3145(b), the District Court reviews a Magistrate Judge's detention order under Section 3145(b) *de novo*, but is not required to conduct a hearing. See, e.g., United States v. Tortora, 922 F.2d 880, 883 n.4 (1st Cir.1990) (standard for district court's review of magistrate's detention findings under Section 3145(b) is *de novo*); Rebollo-Andino, 312 Fed.Appx. at 348 (unpublished) (district court was not required to convene hearing on defendant's motion for *de novo* review under Section 3145(b)); United States v. Oliveira, 238 F. Supp. 3d 165, 167 (D. Mass. 2017) (citing United States v. Marquez, 113 F.Supp.2d 125, 127 (D. Mass. 2000); United States v. Pierce, 107 F.Supp.2d 126, 127 (D. Mass. 2000) ("Section 3145(b) of Title 18 does not provide for a hearing as a matter of right and this Court declines to grant one"); United States v. Foley, 07-10390-RGS, 2009 WL 458558, *3, n.3 (D. Mass. Feb. 24, 2009) (declining to convene evidentiary hearing).

Since the defendant does not request an evidentiary hearing (and offers no basis for why one would be necessary), the Court should decline to convene an evidentiary hearing and consider detention *de novo* by reviewing the record below. See, e.g., Pierce, 107 F.Supp.2d at 127; Foley, 97-10399-RGS, 2009 WL 458558, *2-3; United States v. Hernandez, 14-10367-RGS, 2015 WL 4448094, *1 (D.Mass. July 20, 2015). Accordingly, "[w]here, as here, a court examines the detention order without taking new evidence, a degree of deference to the factual determinations of the Magistrate tempers the independent review." United States v. McForbes, 109 F.Supp.3d 365, 367 n.2 (D.Mass. 2015) (Hillman, J.).

A defendant must be detained pending trial if, after a hearing, the court determines that "no condition or combination of conditions will reasonably assure the appearance of the person

6

as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e).[3] In determining whether any conditions of release will reasonably assure the defendant's appearance and the safety of any other person and the community, the Court must consider the factors set forth in 18 U.S.C. § 3142(g), which include: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence; (2) the weight of the evidence; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger that the defendant's release would pose to any other person or the community.

Additionally, the Court "permit the temporary release" of the defendant to the custody of "a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). The defendant carries the burden of showing that his release is necessary to the preparation of his defense or for another compelling reason. See United States v. Dupree, 833 F. Supp. 2d 241, 246 (E.D.N.Y. 2011) ("A defendant has the burden of showing that temporary release is 'necessary for preparation of the person's defense' under Section 3142(i).") (citations omitted).

## ARGUMENT

**I. THE DEFENDANT PRESENTS AN OVERWHELMING DANGER TO THE COMMUNITY AND RISK OF FLIGHT**

At the detention hearing, and even now on reconsideration, the Defendant does not contest the overwhelming evidence of his dangerousness, risk of flight, or risk of obstruction of

---

[3] As noted by the Senate Judiciary Committee: "This reference to safety of any other person is intended to cover the situation in which the *safety of a particular identifiable individual, perhaps a victim or witness*, is of concern, while the language referring to the safety of the community refers to the danger that *the defendant might engage in criminal activity to the detriment of the community*." S. Rep. No. 98-147, at 39 (1983) (emphasis added; footnotes omitted); *see also United States v. Patriarca,* 948 F.2d 789, 792–793 (1st Cir. 1991).

justice. Cf. D. 504, 732; Tr. 1-48. As such, the Defendant's sole claim relates to the medical issues he faces related to his single kidney and his dialysis treatment. The government notes that this medical condition is long-standing and was ongoing during all of the physically demanding violent incidents committed by the Defendant that were detailed at the hearing.

This kidney condition was not so physically debilitating that it prevented the Defendant from chasing down a rival gang member in the street and repeatedly punching and kicking him in February 2019. Furthermore, this condition did not prevent the Defendant and three other Latin Kings from dragging a 16 year old victim from a vehicle, and stomping him in the face and delivering numerous punches to him as he cowered on the ground in November 2019. Moreover, the condition did not affect the Defendant's ability to, as he described it, "jog" from a shooting he personally committed in July of 2019 all the way back to the Latin Kings trap house. See Exhibits 7, 8, 9, 19. Nothing has been presented to suggest that the defendant's willingness and capacity to inflict and orchestrate violence has diminished or changed in the intervening four months. Accordingly, in light of the uncontested evidence of dangerousness presented at the hearing, and because the Section 3142(g) factors are not meaningfully disputed, the Defendant must be detained.

## II. THE EMERGENCE OF COVID-19 DOES NOT WARRANT THE DEFENDANT'S RELEASE

The Defendant's Motion does not address the statutory factors that guide the detention analysis, and instead argues for release primarily on the basis that COVID-19 is dangerous to him based upon his kidney condition and need for dialysis. However, the COVID-19 pandemic—while undoubtedly serious and necessitating strong precautionary steps, particularly in detention facilities—has not changed the facts and circumstances particular to the Defendant

that demonstrate his risk of obstruction and danger to the community, and therefore does not warrant his release.

The Defendant's argument for release relies primarily on generalized fears about the specter of a COVID-19 outbreak at his facility. However, the Defendant's speculative concerns about the risk to his health in the event of an outbreak do not satisfy the requirement of 18 U.S.C. § 3142(g) and they do not constitute a "compelling reason" justifying his release under 18 U.S.C. § 3142(i), particularly in light of the extensive precautionary measures that detention facilities have taken to reduce the risk of transmission. Indeed, these measures have proven remarkably successful with no inmates and only one staff member having tested positive.

Moreover, the Defendant does not show that his proposed plan for release would in fact mitigate his risk of contracting COVID-19, nor does he make any serious effort to show that if he were to be released he would not pose a continuing danger to the community. For these reasons, he fails to carry his burden to show that his temporary release is warranted under Section 3142(i).

### A. *The Speculative Risk of COVID-19 Is Not A Compelling Reason For Release*

The Defendant has not demonstrated that the speculative risk of a COVID-19 outbreak poses a risk to his health. In his Motion, he claims that there are conditions of release that can be crafted to mitigate the danger he poses, including home detention. Given that all of the incidents detailed at the detention hearing took place while the Defendant was on pretrial release or on probation, this claim is belied by the undisputed facts. The Defendant does not claim that he cannot receive the dialysis that he requires while incarcerated, only that it is being provided by a facility that is inconvenient to counsel. D. 677, p. 11; D. 743.

Although the courts have recognized that a defendant's medical condition can be a compelling reason justifying temporary release, they have only done so "sparingly to permit a

9

defendant's release where, for example, he is suffering from a terminal illness or serious injuries." United States v. Hamilton, No. 19-CR-54-01 (NGG), 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020).  Indeed, in the rare cases where courts have found a medical condition to be a compelling reason for release, the defendants were actually suffering from severe medical conditions that could not be adequately treated at their detention facilities.  See, e.g., United States v. Scarpa, 815 F. Supp. 88 (E.D.N.Y. 1993) (releasing defendant who suffered from terminal AIDS that could no longer be managed by correctional authorities, where he was unlikely to survive long enough to stand trial, and "the restrictive terms of his house arrest," in connection with his physical incapacitation, "would effectively incapacitate [him] to the same extent as prison").

Comparatively, the Defendant does not argue that he has contracted COVID-19 or that he has anything that could be described as symptoms—he only raises concerns about the possibility of contracting it.  Nor does the Defendant claim that he would not be able to receive adequate care if he were to contract the virus.  This falls far short of the severe injury and urgent need to obtain care outside of a detention facility that has warranted release in other cases.  As several courts have held, the speculative risk of a COVID-19 outbreak is not a compelling reason for release under Section 3142(i)—even in cases where the defendant has an underlying medical condition that increases his or her risk of severe illness from the virus.  See, e.g., United States v. Pereira, 2020 WL 2324054, at *1 (May 10, 2020) (Stearns, J.) (though defendant "more vulnerable than many others might be should he contract the COVID-19 virus. I do not, however, believe that his medical condition is so acute as to render the risk unmanageable"); United States v. Clark, No. 19-40068-01-HLT, 2020 WL 1446895, at *8 (D. Kan. Mar. 25, 2020) (denying release of defendant whose diabetes put him at increased risk of serious illness from COVID-19

where the risk of an outbreak at his facility was speculative, he did not show that his proposed release plan would reduce his overall risk, and his release would put pretrial services and law enforcement at increased risk); United States v. Lunnie, No. 4:19-CR-00180 KGB, 2020 WL 1644495, at *5 (E.D. Ark. Apr. 2, 2020) (COVID-19 was not a compelling reason warranting release under 18 U.S.C. § 3142(i) where the defendant's arguments about a potential outbreak at his facility were speculative, he failed to show that his "lifelong bouts with bronchitis" increased his risk of severe illness if he were to contract COVID-19, and he did not demonstrate that "his proposed release plan would necessarily alleviate his overall COVID-19 risks," or the risks to the community).

Thus, the clear trend among several courts that have addressed this issue is to deny temporary release, even when the defendant raises individualized risk factors based on his or her health condition, where there is only a generalized concern about the potential of a COVID-19 outbreak and the detention facility is taking reasonable measures to mitigate the risk. See United States v. Martin, No. CR PWG-19-140-13, 2020 WL 1274857, at *4 (D. Md. Mar. 17, 2020) (finding that the COVID-19 pandemic was not new information warranting release under 18 U.S.C. § 3142(f)(2)(B), explaining: "while the record confirms that Martin has disclosed that he suffers from asthma, high blood pressure, and diabetes, this alone is insufficient to rebut the proffer by the Government that the correctional and medical staff at CDC are implementing precautionary and monitoring practices sufficient to protect detainees from exposure to the COVID-19 virus.").

Accordingly, in a case like this—where the defendant raises only speculative concerns about the risk of contracting a virus, and has made no effort to explain why his continued detention would prevent him from obtaining adequate care if he were to become sick—no

compelling reason exists to grant temporary release under Section 3142(i). See United States v. Rebollo-Andino, 312 F. App'x 346, 348 (1st Cir. 2009) (declining to reverse denial of motion for release based on health conditions under 18 U.S.C. § 3142(i) where the defendant did not identify any specific medical conditions and failed to "explain why his detention would prevent him from obtaining adequate treatment" for any condition that he did have).

### B. *The Defendant Has Not Shown that Detention Facility Precautionary Measures Are Inadequate To Mitigate the Risks of COVID-19 to Dangerous Detainees*

Nor can the Defendant establish that the speculative risk of COVID-19 is a compelling reason to release him from detention when he is housed at a facility that has taken extensive precautionary measures to mitigate the risk. The Government recognizes that COVID-19 presents a public health emergency. All facets of national, state, and local government have turned their focus and determination to slowing the spread of the outbreak, protecting the health and safety of the community, and addressing the medical needs of those who have contracted the virus. That focus and attention includes authorities and staff responsible for federal and state detention facilities, including Monmouth County Correctional Institution (MCCI). That response has proven remarkably effective.

The Defendant's Motion does not address the extensive procedures described by the Monmouth Sheriff, and there is no indication that these measures are inadequate to control the transmission of the virus at the facilities. Indeed, since these efforts have been implemented, there have been no additional reported cases of COVID-19 at MCCI, and the Government would accurately characterize them as extremely robust and effective.[4] Consequently, the Defendant

---

[4] See 2 Monmouth County Jail Inmates Test Positive For Coronavirus, NJ.com (April 7, 2020), *available at*. https://www.nj.com/coronavirus/2020/04/2-monmouth-county-jail-inmates-test-positive-for-coronavirus.html.

has failed to show that in light of these effective precautionary and preparatory efforts, his continued detention puts him at sufficient risk of contracting COVID-19 to warrant release. See Hamilton, 2020 WL 1323036, at *2.[5]

### C. The Defendant's Proposed Release Would Not Mitigate the Risks of COVID-19 or His Danger to the Community

The Defendant also does not show that his proposed plan for release would actually mitigate his risk of contracting COVID-19. Although he proposes release, he offers no evidence that his proposed plan would actually mitigate the risk of infection compared to the risk he faces while detained. Indeed, the Defendant's bare-bones plan for release offers no details about the comparative risk he faces at his mother's home: he does not address who visits the proposed residence and whether they will be screened for COVID-19 prior to his interactions with them; he does not address his access to medical care if he were to become sick; and he fails to identify any specific COVID-19 precautions that are begin taken at the residence, such as requiring all members of the household to observe recommended social distancing, wear masks, and follow hygiene practices to reduce the risk of exposure to the virus.[6] Moreover, he does not describe his access to medical care in comparison to the on-demand services at MCCI. See Pereira, 2020 WL 2324054, at *1 ("release would take Pereira out of a setting in which medical services are available and place him in one in which they likely are not").

Accordingly, there is no concrete evidence that the Defendant's risk of contracting the virus would be any lower while released—where he has not demonstrated that there are any protections against exposure to the virus—than if he were to remain detained at Monmouth—

---

[5] Moreover, the government notes that the USMS is potentially seeking to transfer the Defendant to a facility in either Connecticut, Rhode Island, or New Hampshire.

[6] See D. 677, p. 10 ("home detention, that will mitigate any danger Torres may pose, while allowing him to remain isolated in a home-setting").

13

which has implemented extensive (and successful) precautionary measures to reduce the risk of infection to all inmates. See Lunnie, 2020 WL 1644495, at *5 (finding that the proposed release to home confinement was not "necessary" for a compelling reason under Section 3142(i) where it was not "tailored to mitigate . . . the defendant's overall COVID-19 risks," including because the defendant did not show that adequate COVID-19 precautions would be taken at his home and there was thus "nothing more than speculation that home detention would be less risky than living in close quarters with others" in jail, "which at least has screening practices and other reasonable COVID-19 precautions in place."); Clark, 2020 WL 1446895, at *6 (same).

Furthermore, the Defendant makes no serious effort to show that, if he were released, he would not continue to pose a serious danger to the community. The Defendant proposes release to home confinement, but he does not propose—and there is no practical way to impose—a limitation on his access to landline phones, smartphones, and other digital communication devices. Thus, there is no way to enforce the proposed condition restricting him from having contact with other members of the Latin Kings and continuing his racketeering activity through such communications. Compare D. 677, p. 11 ("specifically home detention, that will mitigate any danger Torres may pose, while allowing him to remain isolated in a home-setting").

Moreover, as other courts have observed when denying release to dangerous defendants in the same context, "location monitoring is not a limitless resource, nor is its installation and monitoring by United States Pretrial Services officers without risk to those personnel (who must be trained and certified to install location monitoring) given the current recommendations regarding implementation of social distancing." United States v. Martin, No. CR PWG-19-140-13, 2020 WL 1274857, at *4 (D. Md. Mar. 17, 2020). The Defendant has made no effort to show that he would not continue to pose a danger to the community if he were released, as he has

in the past – all of the various incidents described above took place while the Defendant was on pretrial release or probation. Additionally, Pretrial services is no longer able to provide location monitoring during the pandemic, and that condition is no longer capable of being ordered.  As such, releasing him would impose a further burden on the already strained resources of pretrial services as well as federal, state, and local law enforcement.  See Pereira, 2020 WL 2324054, at *1 ("proposed conditions of noncustodial confinement are either impractical at present (ankle bracelet monitoring, for example) or inappropriate").

Pretrial and probationary conditions ordering him to not commit crimes have proven fruitless in stopping him from associating with the gang, participating in beatings, or distributing cocaine case.  Indeed, *while on pretrial release for witness intimidation, he participated in three shootings, and one vicious street beating of rival gang members.  While on probation for witness intimidation, he conducted a brazen beating and robbery of a 16-year-old victim, and then bragged about a recent attempted murder in a rap video, naming the victim, and posting it online for public view*.  Based on all of the above, the Magistrate Court properly determined that the Defendant presents an overwhelming and unmitigated danger to the community if released, and must be detained.

## **CONCLUSION**

For the foregoing reasons, the Defendant's motion for revocation of detention order should be denied.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By: */s/ Philip A. Mallard*
Philip A. Mallard
Assistant U.S. Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston MA 02210
617-748-3674

### CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Philip A. Mallard*
Philip A. Mallard
Assistant U.S. Attorney

Date: May 14, 2020